```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, ANNUITY AND APPRENTICESHIP,
AND SKILL IMPROVEMENT AND SAFTEY
FUNDS, et al.,

                         Plaintiffs,             REPORT AND
                                                 RECOMMENDATION
       -against-                                 20 CV 1837 (EK)(RML)

GENRUS CORP.,

                         Defendant.
----------------------------------------------------------------X
```

LEVY, United States Magistrate Judge:

By order dated October 18, 2021, the Honorable Eric R. Komitee, United States District Judge, referred plaintiffs' motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted.

## BACKGROUND AND FACTS

Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds, Trustees of the Local 1010 Apprenticeship, Skill Improvement and Training Funds (the "Funds"), and the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union," together with the Funds, "plaintiffs"), brought this action on April 17, 2020, under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 (2011). (Complaint, dated Apr. 17, 2020 ("Compl."), Dkt. No.1, ¶ 1; see also First

Amended Complaint, dated June 25, 2021 ("Am. Compl."), Dkt. No. 17, ¶ 1.)  The Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3).  (Am. Compl. ¶ 4.)  The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. § 142, and section 3(4) of ERISA, 29 U.S.C. § 1002(4).  (Am. Compl. ¶ 5.)

Defendant Genrus Corp. ("defendant") is a construction company incorporated under the laws of New York, with its principal place of business in St. Albans, New York.  (Am. Compl. ¶ 6.)  Plaintiffs allege that defendant was a party to a collective bargaining agreement (the "CBA") with the Union.  (Am. Compl. ¶ 7; see also Declaration of Keith Loscalzo in Support of Plaintiffs' Motion for Default Judgment, dated Oct. 8, 2021 ("Loscalzo Decl."), Dkt. No. 24, ¶ 5; Collective Bargaining Agreement, annexed as Ex. A to the Loscalzo Decl., Dkt. No. 24-1.)  The CBA requires defendant to make specified monetary contributions to the Funds for all work performed in the trade and geographical jurisdiction of the Union ("Covered Work"). (Memorandum of Law in Support of Plaintiffs' Second Motion for Default Judgment, dated Oct. 15, 2021 ("Pls.' Mem."), Dkt. No. 28, at 2; Am. Compl. ¶ 8; Loscalzo Decl. ¶ 8; Collective Bargaining Agreement, Art. IX, § 1.)  Additionally, pursuant to the CBA and the underlying trust agreements, defendant is bound by the terms of a Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy").  (Am. Compl. ¶¶ 14-16; see also Loscalzo Decl. ¶ 9; Declaration of Joseph Montelle in Support of Plaintiffs' Motion for Default Judgment, dated Oct.

8, 2021 ("Montelle Decl."), Dkt. No. 25, ¶ 7; Collection Policy, annexed as Ex. C to the Montelle Decl., Dkt. No. 25-2.)

At the time this action was commenced, plaintiffs alleged that defendant had failed to report the number of hours of Covered Work performed by each of its employees for the period November 2019 through January 2020. (Compl. ¶¶ 20-21; Montelle Decl. ¶ 9.) Plaintiffs also alleged that defendant owed interest on late payment of contributions for April 2016, October 2017, May 2018, June 2018, and May 2019.[1] (Compl. ¶¶ 20-21; Montelle Decl. ¶ 9.) Plaintiffs' amended complaint, filed on June 25, 2021, seeks the same. (See generally Am. Compl. See also Pls.' Mem. at 3.)

During the pendency of this action, defendant delinquently paid the Funds contributions for the periods of November 2019 through January 2020 and June through August 2020, and paid interest owed on the late payment of contributions for May 2018, May 2019, and part of June 2018. (Montelle Decl. ¶¶ 10-11, 14.) But defendant accrued and failed to pay interest on late payment of contributions for May 2019, October through December 2020,[2] and June 2021. (Montelle Decl. ¶ 12.) Defendant also submitted reports for work performed in June and July 2018 but did not submit contributions for those periods. (Declaration of Katy Kabala in Support of Plaintiffs' Motion for Default Judgment, dated Oct. 8, 2021 ("Kabala Decl."), Dkt.

---

[1] Plaintiffs note that payment interest for April 2016 and October 2017 was awarded to the Funds in a judgment issued in Trustees of the Pavers and Road Builders District Council Welfare Fund et al. v. Genrus Corp., 18 CV 4232, 2019 WL 4602880 (E.D.N.Y. Sept. 23, 2019). Therefore, plaintiffs no longer seek interest for those late payments. (Montelle Decl. ¶ 10 n. 1-2.)

[2] Plaintiffs explain that the owed contributions for October 2020 are being sought in a separate action as they relate to work performed on a public project and are subject to a payment bond, but the late payment interest on previously submitted contributions for October 2020 is not covered by the applicable payment bond and is therefore sought in the instant action. (Montelle Decl. ¶¶ 11 n. 3, 12 n. 4.)

3

No. 26, ¶¶ 9-14.)  Taking these developments into account, plaintiffs are now seeking to recover: (1) unpaid contributions for June and July 2018; (2) interest on these delinquent contributions; (3) liquidated damages on the delinquent contributions; (4) interest on the late payment contributions for May 2019, October through December 2020, and June 2021; and (5) attorney's fees and costs.  (Pls.' Mem. at 3.)

To date, the court has received no communication from defendant.  Accordingly, the Clerk of the Court entered a certificate of default against defendant.  (Certificate of Default, dated Aug. 10, 2021, Dkt. No. 22.)  Plaintiffs filed their second motion for default judgment on October 15, 2021.  (Second Motion for Default Judgment, dated Oct. 15, 2021, Dkt. No. 23.)  Judge Komitee referred plaintiffs' motion to me for report and recommendation.  (Order, dated Oct. 18, 2021.)

## DISCUSSION

It is well settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  City of New York v. Mickalis Pawn Shop, 645 F.3d 114, 128-29 (2d Cir. 2011); Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992).  In civil actions, when a party fails to appear after having been given notice, the court normally has justification for entering default.  Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984).  Here, plaintiffs have filed an affidavit of a licensed process server attesting that defendant was served by delivering copies of the summons and complaint to the New York Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1)(b) and New York Business Corporation Law § 304(a).  (See Affidavit of Edward J. Bowmaker, sworn to June 29, 2021, Dkt. No. 20.)  The defendant has failed to appear, respond to the complaint, or respond to the plaintiffs'

application for default. The grounds for default are therefore clearly established and I recommend entering judgment by default.

Upon default, allegations pertaining to damages are not deemed admitted. Greyhound, 973 F.2d at 158. The movant must establish its entitlement to the recovery of damages. Id. The court may conduct a hearing or rely on affidavits or other documentary evidence to determine damages. See FED. R. CIV. P. 55(b)(2).

Under section 515 of ERISA, defendant is required to make contributions to the Funds in accordance with the terms of the CBA. See 29 U.S.C. § 1145. In an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan as:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant,
>    and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). In addition, the LMRA authorizes federal lawsuits "for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Defendant's failure to remit dues to the Union and contributions to the Funds is in violation of the CBA and underlying trust agreements, and as a matter of contract law and under Section 301 of the LMRA, plaintiffs are entitled to damages on behalf of the Funds and the Union. See Brown v. C. Volante Corp., 194 F.3d 351, 354 (2d Cir.

5

1999) (holding that employee benefit plans are permitted to bring suit under Section 301 of the LMRA to collect delinquent contributions, as well as interest).

Plaintiffs seek: (1) outstanding contributions of $13,512 and union assessments and dues check-offs of $768 for June and July 2018; (2) interest on the delinquent contributions at an annual rate of ten percent through October 8, 2021 for a total of $4,245.17; (3) liquidated damages on the delinquent contributions in the amount of $2,261.40; (4) late payment interest of $447.22 for May 2019, October 2020 through December 2020, and June 2021; and (5) reasonable attorney's fees and costs in the amount of $9,384.90.  (Pls' Mem. at 3.)  I will address each of plaintiffs' requests in turn.

1. Unpaid Contributions and Union Dues

Plaintiffs seek an award of $13,512 in delinquent contributions for June and July 2018 and $768 in unpaid union assessments and dues check-offs.³  The CBA requires defendant

---

³ As previously noted, plaintiffs did not originally seek to recover delinquent contributions and dues for June and July 2018 in their complaint or amended complaint. Plaintiffs now seek to recover these delinquent contributions based on reports defendant submitted during the pendency of this action.  Rule 54(c) states that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the demand for judgment." FED. R. CIV. P. 54(c).  However, Rule 54(c) is not violated if a court awards damages that have accrued during the pendency of the litigation where the complaint has put the defendant on notice that the plaintiff might seek such damages.  See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp., No. 20 CV 1834, 2022 WL 584536, at *7 (E.D.N.Y. Feb. 3, 2022) ("Rule 54(c) is not violated . . . when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages for example by including in the complaint a request for unpaid contributions that might become due and owing during the litigation." (internal quotation marks and citation omitted)), report and recommendation adopted, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022); Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. J.& A. Contractors Corp., No. 20 CV 1189, 2021 WL 7159908, at *6 (E.D.N.Y. Oct. 28, 2021) ("Here, the complaint states that plaintiffs seek 'any additional delinquent benefit contributions, interest, liquidated damages, and attorney's fees determined to be due according to the CBA for any weeks that are unpaid as of the date judgment is entered and thereafter.' This
Continued . . .

to submit reports detailing the number of hours of work performed by its employees and the corresponding benefit contributions. (Loscalzo Decl. ¶¶ 10-11.) Plaintiffs retain Zenith American Solutions Inc. ("Zenith") as a third-party administrator of the Funds to monitor the payment of benefit contributions and union assessments. (Kabala Decl. ¶¶ 3, 6.) Plaintiffs provided the court with a copy of the discrepancy report generated by Zenith for all periods relevant to this action. (Discrepancy Report, attached as Ex. G to the Kabala Decl., Dkt. No. 26-1.) Based on the remittance reports and payments submitted by defendant, Zenith concluded that defendant underpaid its contributions to the Funds by a total of $13,512 for June and July 2018. (Kabala Decl. ¶¶ 9-13.) Additionally, Zenith found that defendant owes $768 in unpaid union assessments and dues check-off. (Kabala ¶ 14; see also Discrepancy Report.)

   Having reviewed the declarations and exhibits attached to the motion for default judgment, I find that Zenith's report sufficiently establishes the amount defendant owes plaintiffs in unpaid contributions and unpaid union assessments and dues check-offs. Therefore, I respectfully recommend that plaintiffs be awarded $13,512 in unpaid contributions and $768 in unpaid union assessments and dues check-offs.

---

language provides the required notice and the Court may properly award damages which accrued after the complaint was filed."), report and recommendation adopted, 2022 WL 42524 (E.D.N.Y. Jan. 5, 2022); see also Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) ("[T]he demand for contributions that became due after suit was filed is proper because the complaint includes a request for unpaid contributions that might become due and owing during the litigation.").

 Here, the amended complaint seeks "any additional delinquent benefit contributions, interest, liquidated damages, and attorneys' fees determined to be due according to the CBA for any weeks that are unpaid as of the date judgment is entered and thereafter." (Am. Compl. ¶¶ 22, 28, 33.) Thus, defendant was put on notice that it may be responsible for any delinquent contributions that were unpaid as of when a judgment is entered. I therefore find that the court may properly award damages for unpaid delinquent contributions for June and July 2018.

2. Interest

Plaintiffs seek interest on the unpaid contributions. Pursuant to section 502 of ERISA, plaintiffs are entitled to interest on the delinquent contributions calculated at the rate provided by the plan. See 29 U.S.C. § 1132(g)(2)(E). The CBA and Collection Policy provide that interest on the unpaid contributions and unpaid dues are to be calculated at the rate of ten percent per annum from the date that each monthly contribution was due. (Loscalzo Decl. ¶ 14; Montelle Decl. ¶¶ 8, 13; Collective Bargaining Agreement, Art. IX, § 5; Collection Policy, attached as Ex. B to the Montelle Decl., Dkt. No. 25-2.) I have reviewed the calculation tables provided by plaintiffs and find that they accurately reflect the interest due through October 8, 2021. (See Genrus Interest Calculations, attached as Ex. D to the Montelle Decl., Dkt. No. 25-3; Discrepancy Report.) However, since interest continues to accrue on all outstanding principal through the date of the entry of judgment, I cannot recommend a specific interest award at this time. Instead, I respectfully recommend that interest be awarded on the unpaid principal at the rate of ten percent per annum, through the date of judgment.[4]

3. Liquidated Damages

Plaintiffs seek $2,261.40 in liquidated damages for the total amount of delinquent contributions. (See Pls.' Mem. at 8-9.) "Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." Sullivan v. Marble Unique Corp., No. 10 CV 3582, 2011 WL 5401987, at *6

---

[4] The calculations should be done as follows: the outstanding June 2018 contributions, totaling $7,992.96, accrue $2.07 of interest per day from August 4, 2018 through the date of entry of judgment or ($7,570.56 + $422.40)*(0.1)*(number of days late). The outstanding July 2018 contributions, totaling $6,287.04, accrue $1.63 of interest per day from September 4, 2018 through the date of entry of judgment or ($5,941.44 + $345.60)*(0.1)*(number of days late)).

8

(E.D.N.Y. Aug. 30, 2011) (citing 29 U.S.C. § 1132(g)(2)(C)), report and recommendation adopted, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011).  Pursuant to the CBA and the Collection Policy, liquidated damages are to be calculated at a rate of ten percent of the amount of the delinquency.  (Montelle Decl. ¶ 14; Collective Bargaining Agreement, Art. IX, § 5; Collection Policy, Art. II, § 4.)

Plaintiffs calculated liquidated damages based on the $9,102 in delinquent contributions for December 2019 and January 2020[5] and the $13,512 in current outstanding contributions for June and July 2018.  (Pls.' Mem. at 8-9; Montelle Decl.¶ 14; Liquidated Damages Spreadsheet, attached as Ex. F to the Montelle Decl., Dkt. No. 25-5.)  Having reviewed plaintiffs' calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded the requested $2,261.40 in liquidated damages, which amounts to ten percent of the total unpaid contributions.

4. Interest on Late Contributions

Plaintiffs also seek interest on the late payment of contributions for May 2019, October through December 2020, and June 2021 in the amount of $447.22.  (Pls.' Mem. at 8; Kabala Decl. ¶¶ 15, 23.)  Under Article II of the Collection Policy, if an employer fails to make contributions when due, the employer is "liable for the payment of delinquent Contributions with

---

[5] While defendant did pay the delinquent contributions for December and January 2020 during the course of this litigation, liquidated damages calculations should include the amount of delinquency at the time the action was commenced.  See Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995) ("[A]n employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions.").

interest at the rate of ten percent (10%) per annum (calculated from the Due Date)." (Montelle Decl. ¶ 8; Collection Policy, Art. II, § 5.)

Zenith monitors late payment interest that accrues when employers pay benefit contributions beyond their due date. (Kabala Decl. ¶ 15.) Plaintiffs provided a Late Payment Interest ("LPI") Report which indicates the months for which contributions were paid late, the dates on which plaintiffs received the contributions, and the late payment charges that were assessed. (Id. ¶¶ 17-20; LPI Report, attached as Ex. H to the Kabala Decl., Dkt. No. 26-1.) Zenith calculated the late payment interest as follows: first, it counted the number of days that the contributions were paid late. (Kabala Decl. ¶ 21.) Then, the daily interest rate was calculated by multiplying the contribution amount due by the ten percent annual interest rate found in the CBA, which was then divided by the full year of 365 days. (Id.) Finally, the daily rate was applied to the number of days that the payment was late. (Id.) Using this method, Zenith calculated that defendant owed plaintiffs $447.22 in interest for the period May 2019, October through December 2020, and June 2021. (Id. ¶ 23; LPI Report.)

Having reviewed plaintiffs' calculations and supporting documentation, I find that they are accurate. Accordingly, I respectfully recommend that plaintiffs be awarded at total of $447.22 in late payment interest.

### 5. Attorney's Fees and Costs

Finally, plaintiffs seek an award of attorney's fees and costs. (Pls.' Mem. at 9-10.) As the prevailing party, plaintiffs are entitled to an award of attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(D). Plaintiffs' counsel seek $8,819 in attorney's fees and $565.90 in costs. (Pls.' Mem at 11; Declaration of Adrianna R. Grancio, Esq., dated Oct. 15, 2021 ("Grancio Decl."), Dkt. No. 27, ¶¶ 16-17.)

10

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." Id. at 190. Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by its counsel. (Billing Records, annexed as Ex. L to the Grancio Decl., Dkt. No. 27-4.) Plaintiffs request a rate of $250 per hour for the 17.2 hours expended by Adrianna R. Gancio, Esq., the 0.1 hours expended by Nicole Marimon, Esq., and the 15.5 hours expended by law clerk Maura Moosnick. (Grancio Decl. ¶¶ 10-12.) Additionally, plaintiffs request a rate of $80 for the 7.1 hours expended by the legal assistants on this case.[6] (Id. ¶ 13.)

To determine what constitutes a reasonable hourly rate, this court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. Fund v. Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). In

---

[6] The legal assistants on this case were Emily Barsamian ("EB" in the accompanying billing records), Julia Burstein ("JB" in the accompanying billing records), Eva Codispoti ("EC" in the accompanying billing records), and Morgan Behrens ("MB" in the accompanying billing records). (Grancio Decl. ¶ 13 n. 1; Billing Records). In reviewing plaintiffs' Billing Records, I noted an error in the hours billed for Morgan Behrens. The 9/29/2020 entry for Ms. Behren's three hours worked erroneously bills a rate of $250 per hour rather than $80. (See Billing Records.) I have corrected for this in my calculations.

11

this district, the prevailing hourly rates are "generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." LG Cap. Funding, LLC v. 5Barz Int'l, Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (citing Tacuri v. Nithin Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015)); see also Gesualdi v. Lubco Transp. Inc., No. 15 CV 6727, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017); Cabrera v. Schafer, No. 12 CV 6323, 2017 WL 9512409, at *11 (E.D.N.Y. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017). "Courts have also recognized 'the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges.'" Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 20 CV 1980, 2021 WL 7908024, at *6 (E.D.N.Y. Jan. 4, 2021) (quoting Lubco Transp. Inc., 2017 WL 946297, at *4).

Ms. Grancio, an associate at Virginia & Ambinder, LLP ("V&A"), has been practicing law since 2016 and has "handled the prosecution of numerous ERISA collection actions." (Grancio Decl. ¶ 10.) Ms. Marimon, a partner at V&A, has been practicing law since 2014 and has "regularly represented and served as lead counsel for multiemployee benefit plans in ERISA litigation since her admission to the bar." (Id. ¶ 11.) I find the requested rate of $250 for those two attorneys to be reasonable in light of the prevailing rates in this district for attorneys with comparable experience. See, e.g., Shelbourne Constr. Corp., 2021 WL 7908024, at *6 (finding a requested hourly rate of $250 for Ms. Grancio reasonable); Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19 CV 2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020) (finding a rate of $250 per hour for Ms. Grancio and Ms. Marimon falls within the

12

range of rates recognized as reasonable in this district), report and recommendation adopted, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020). Ms. Moosnick, a law clerk at V&A, graduated law school in 2021 and from 2016 to 2021 "served in various capacities as a legal assistant and law clerk assisting with federal labor law practice, including ERISA litigation." (Grancio Decl. ¶ 12.) I find the requested rate of $250 to be high in comparison to the prevailing rates in this district for an unadmitted attorney, and I recommend reducing Ms. Moosnick's rate to $100 per hour given her previous experience with this area of law. See Gesualdi v. Bedford Container Servs., Inc., No. 19 CV 4183, 2020 WL 6370165, at *6 (E.D.N.Y. Aug. 13, 2020), report and recommendation adopted in part, No. 19 CV 4183, 2020 WL 5248860 (E.D.N.Y. Sept. 3, 2020) (awarding an unadmitted law clerk $85 per hour and noting that "[l]aw clerks are usually awarded the same hourly rate as paralegals in this District"); 5Barz Int'l, Inc., 2019 WL 3082478, at *2 (awarding an unadmitted law clerk a rate of $85 per hour); Trs. of Ne. Carpenters Health, Pension Annuity, Apprenticeship, and Labor Mgmt. Coop. Funds v. Northcoast Maint. Corp., 17 CV 5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018) (noting that courts in this district typically award hourly rates ranging from $100 to $300 for associates and $70 to 100 for paralegals). Finally, I find the requested rate of $80 for the work of the legal assistants on this case to be reasonable. See., e.g., Shelbourne Constr. Corp., 2021 WL 7908024, at *6 (finding requested hourly rate of $80 for legal assistants reasonable); Shelbourne Constr. Corp., 2020 WL 1668041, at *8 (same); Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Sanders Const., 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (finding $90 to be a reasonable hourly rate for the work of legal assistants).

13

Turning next to the reasonableness of time expended, I find that it was reasonable for counsel to devote 39.9 attorney hours to this case. See, e.g., Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (finding that 39.4 hours billed in a comparable case was "within the range of reasonable hours expended in similar ERA cases involving default judgment"); Shelbourne Constr. Corp., 2020 WL 1668041, at *8 (holding that 45.30 hours in a similar case was not excessive, redundant, or unnecessary). Therefore, I respectfully recommend that plaintiff be awarded $6,443 in attorney's fees.

Plaintiff also seeks costs in the amount of $565.90. (Pls.' Mem. at 11; Grancio Decl. ¶ 17; Billing Records.) 29 U.S.C. § 1132(g)(2)(D) directs a court to award reasonable costs when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(D). A plaintiff that prevails in an action under ERISA is entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). In this case, those costs include $400 for the filing fee, $143 for process server fees, and $22.90 for postage. (See Pls.' Mem. at 11; Grancio Decl. ¶ 17; Billing Records.) I find that the requested costs are reasonable and I therefore recommend that plaintiffs be awarded $565.90 in costs.

## CONCLUSION

For the reasons explained above, I respectfully recommend that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded: (a) $13,512 in unpaid contributions and $768 in unpaid union assessments and dues check-offs; (b) interest on the unpaid principal at the rate of ten percent per annum, through the date of judgment (c) $2,261.40 in liquidated damages; (d) $447.22 in late payment interest; (e) $6,443 in attorney's fees; and (f) $565.90 in costs.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Komitee and to my chambers, within fourteen (14) days.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
　　　　June 14, 2022